**HEENAN & COOK, PLLC**
John Heenan
1631 Zimmerman Trail
Billings, MT 59102
Tel: (406) 839-9091
john@lawmontana.com

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
(*Pro hac vice forthcoming*)
60 Cuttermill Rd
Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com

**THE KEETON FIRM LLC**
Steffan T. Keeton
(*Pro hac vice forthcoming*)
100 S Commons
Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| STACIA DAHL, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff<br><br>v.<br><br>ELANCO ANIMAL HEALTH INCORPORATED,<br><br>Defendant. | **Case No.** CV-22-11-GF-BMM-JTJ<br><br>The Honorable Brian Morris<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Stacia Dahl ("Plaintiff"), on behalf of herself and others similarly situated, brings this Class Action Complaint against Elanco Animal Health Incorporated ("Defendant" or "Elanco"), and on the basis of personal knowledge, information and belief, and investigation of counsel, alleges as follows:

## FACTS

1.      Defendant manufactures distributes, markets, labels and sells chewable medicine for animals under its Interceptor® Plus brand purporting to provide broad-spectrum parasite protection (the "Product").

2.      During the Class Period (as defined below), Plaintiff purchased the Interceptor Plus® for her dogs.

3.      The Product is used for two purposes:

    a.      to prevent heartworm disease and

    b.      to treat and control infection of adult hookworm, adult roundworm, adult whipworm, and adult tapeworm.

4.      The Product claims to protect against multiple deadly parasites including:

- Heartworm disease (*Dirofilaria immitis*);
- Adult hookworm (*Ancylostoma caninum*);
- Adult roundworm (*Toxocara canis*, *Toxascaris leonina*);
- Adult whipworm (*Trichuris vulpis*);
- Adult tapeworm (*Taenia pisiformis*, *Echinococcus multilocularis*, *Echinococcus granulosus* and *Dipylidium caninum*).

1

5.      Elanco's website warns about the risks that each of these parasites pose to dogs:

## Five key threats to your dog's health

**Heartworm disease[1]**

- Heartworms are transmitted by mosquitoes and infection in dogs has been reported in all 50 states
- Symptoms include coughing, sluggishness and difficulty breathing, although some dogs may show no signs at all.

**Hookworm**

- A common intestinal parasite, one study showed as many as 29.8% dogs in the U.S. were infected[2]
- Can be transmitted in many ways: ingestion of infected intermediate hosts, soil or feces, by microscopic larvae penetrating the pads of a dog's paws or as pups via their mother's milk[3]
- Symptoms may include bloody diarrhea, weight loss and anemia[3]

**Roundworm**

- As many as 12.5% of shelter dogs in the U.S. have roundworms (*T. canis*)[2]
- There is high prevalence of infection, even in dogs routinely treated for intestinal parasites.
- Symptoms may include diarrhea, vomiting, stunted growth, and a bloated belly. Heavy accumulations can cause death.[4]

**Whipworm**

- A common parasite, approximately 18.7% of shelter dogs in U.S. are infected[2] .
- Contracted by dogs ingesting infective eggs (from soil or other contaminated or infested matter where infective eggs are found)[5]
- Symptoms may include bloody diarrhea, dehydration and anemia[5]

**Tapeworm**

- Typically acquired by ingesting tapeworm larvae residing in a host such as rabbits, rodents or fleas[6,7,8]
- Tapeworm segments can show up in a dog's feces or on the fur under its tail

/ / /

/ / /

/ / /

/ / /

6.      Further, Elanco tells consumers that its Product offers more protection and safety compared to competitors:



7.      Defendant's marketing stresses the importance of its medicine and the risks parasites present to pets yet fails to properly inform the public of the Product's risks.

8.      Defendant's "profits over pets" strategy has resulted in thousands of severe adverse reactions and deaths to dogs throughout the country.

9.      Interceptor® Plus has two active ingredients: Milbemycin oxime and Praziquantel.

/ / /

/ / /

10.     According to an article published by the Journal of Veterinary Medicine & Surgery, based on information obtained by the Food and Drug Administration ("FDA"), thousands of pets are being harmed and dying from the Product's active ingredients.[1]

11.     In recent years, the active ingredients in the Product have caused over 172,000 adverse reactions and almost 5,000 dog deaths.

12.     According to the article, the dangers posed by the Product have been known for years. For example, the article states, "Similarly, apparent 'improved' product formulation releases for Interceptor Plus® (2015)…have all shown moderate to marked increases in adverse reaction reports and deaths when compared to their respective earlier formulations."

13.     In other words, "new and improved" versions of the Product have been shown to be far deadlier than prior versions.

14.     Nevertheless, Defendant continues to sell Interceptor® Plus to consumers and their four-legged companions.

15.     Yet nowhere in the labeling, advertising, statements, warranties and/or packaging does Defendant disclose that the Interceptor® Plus can cause severe injury and/or death in the dogs who consume it.

16.     Defendant warrants, promises, represents, labels and/or advertises that Interceptor® Plus is safe for use through the pictures of the happy, healthy dogs which appear on the front of the Products and in other marketing.

/ / /

/ / /

/ / /

/ / /

---

[1] Dodds WJ, Kimball JP. *Updated Summary on Use and Safety of Flea and Tick Preventives for Animals*. J VET MED SURG. Vol. 5., No. 2 (2021).









17.     While the front packaging indicates the medicine protects against parasites it omits that it may also kill or seriously injure the dog that consumes it.



18.     While the Interceptor® Plus is designed to protect against parasitic infections, it is not supposed to harm and kill its wearers and their caregivers.

19.     In an effort to gain a competitive advantage against competitors, Elanco stresses the benefits of its Interceptor® Plus without properly informing the public about its risks.

20.     As a result, thousands of dogs have been severely injured or killed by the use of the Product.

21.     In other words, Elanco's "profits over pets" strategy has impacted pets and their owners throughout the United States and led to thousands of severe adverse reactions and deaths for dogs that would have been avoidable but for Defendant's conduct.

/ / /

/ / /

## **PARTIES**

22.     Plaintiff Stacia Dahl is a resident of Helena, Lewis and Clark County, Montana.

23.     Plaintiff was the owner of a 7-year-old German Shepherd named Ole von Sankt Raphael ("Ole").



a.     Ole was born on June 27, 2014.

b.     In his short life, he accomplished a lot. In 2017, he competed in the Bundessieger-Zuchtschau in Ulm, Germany. This competition is the world championship for German Shepherds. He placed 78th in the world and was rated "excellent."

c.     On or about Christmas 2021, Ole started to feel unwell and showed signs of a possible parasitic infection.

d.     On December 27, 2021, he consumed Interceptor® Plus.

e.    On December 29, 2021, showing significantly worse health post-consumption of the Product, he was taken to the veterinarian. His symptoms included weight loss, sudden loss of appetite, diarrhea, vomiting, lethargy, dry/unproductive cough, shallow and rapid breathing, collapsing, and an inability to climb stairs.

f.    On December 31, 2021, he passed away.

24.    Plaintiff relied on the ubiquitous advertising and marketing, in digital, print and television media touting the Product.

25.    Plaintiff read and relied on the Product's label and packaging and was exposed to the consistent and ubiquitous advertising for the Product before purchase.

26.    Had Plaintiff known the Product would cause, or increase the likelihood of causing, serious injury and/or death, she would not have purchased it.

27.    Plaintiff paid more for the Product than she otherwise would have absent the representations and omissions

28.    Plaintiff decided to purchase the Product over other, less expensive medications based on the Product's marketing and advertising.

29.    At a minimum, Plaintiff and the Class have been injured in the full amount of funds expended in purchasing the Products.

30.    Defendant Elanco Animal Health Incorporated is an Indiana corporation with its principal place of business in Greenfield, Indiana.

31.    Defendant misrepresented the Product through affirmative statements, half-truths, and omissions.

32.    According to Defendant's annual financial report, the Product was one of its top 5 revenue producing products.

33.     Defendant sold more of the Product and at higher prices than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

34.     By engaging in its misleading and deceptive marketing, Elanco reaped and continues to reap increased sales and profits.

35.     As a result of the false and misleading representations, the Product is sold at premium prices compared to other similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION AND VENUE

36.     This Court has personal jurisdiction over Defendant. Defendant purposefully avails itself of the Montana consumer market and distributes the Product to many locations within this County and numerous retail locations throughout the State of Montana, where the Products are purchased by hundreds of consumers every month.

37.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

38. The damages exceed $5,000,000.00 under both the Montana Class and the Consumer Fraud Multi-State Class described herein.

    a.    Montana Class

        i.    A one-year supply of the large dog version of the Product costs approximately $110.00.

        ii.    Based on this information, there were at least 10,001 units sold in Montana during the statutory period.

        iii.    Under the MCPA, each class member may receive the greater of either actual damages or $500.00.

        iv.    At this point, the minimum amount in controversy is in excess of $5,000,000.00.

        v.    Additionally, these damages may be trebled pursuant to the MCPA.

        vi.    Attorney's fees on a class wide basis would exceed $1,000,000.00

    b.    Consumer Fraud Multi-State Class

        i.    A one-year supply of the large dog version of the Product costs approximately $110.00.

        ii.    Defendant has sold at least 50,001 units in these states.

        iii.    At this point, the minimum amount in controversy is in excess of $5,000,000.00.

        iv.    Additionally, these damages may be trebled.

        v.    Attorney's fees on a class wide basis would exceed $1,000,000.00

39. This Court further has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy as between Plaintiff and Defendant exceeds $75,000 and there is diversity of citizenship between them.

40.     Venue is proper in this District under 28 U.S.C. § 1391(a). Plaintiff's purchases of Defendant's Product, substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Product, occurred within this District and the Defendant conduct business in this District.

## CLASS DEFINITIONS AND ALLEGATIONS

41.     Plaintiff, pursuant to Federal Rules of Civil Procedure 23, brings this action on behalf of the following classes (collectively the "Class" or the "Classes"):

a. **Montana Class:** All persons who purchased Defendant's Products within the State of Montana and within the applicable statute of limitations period;

b. **Consumer Fraud Multi-State Class**: All persons in the States of Iowa, Arizona, Hawaii, Ohio, Indiana, Rhode Island, Delaware, Alabama, Louisiana, West Virginia, New Mexico, Michigan, Texas, Arkansas, and Oklahoma, who purchased the Product during the statutes of limitations for each cause of action alleged;

c. **Montana Injury Subclass:** All persons who purchased Defendant's Products within the State of Montana, within the applicable statute of limitations period, and had a pet that suffered injury or death; and

d. **Multi-State Injury Subclass**: All persons in the States of Iowa, Arizona, Hawaii, Ohio, Indiana, Rhode Island, Delaware, Alabama, Louisiana, West Virginia, New Mexico, Michigan, Texas, Arkansas, and Oklahoma, who purchased the Product during the statutes of limitations for each cause of action alleged, and had a pet that suffered injury or death.

42.     Excluded from the Class is Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the Products for resale, all persons who make a timely election to be excluded from the Classes, the judge to whom the case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

43.     The members of the Classes are so numerous that joinder of all Class Members is impracticable. Defendant has sold, at a minimum, tens of thousands of units of the Products to Class Members.

44.     The questions of law and fact common to the Class has the capacity to generate common answers that will drive resolution of this action.  They predominate over any questions affecting only individual class members.  Common questions of law and fact include, but are not limited to, the following:

    a.  Whether Elanco contributed to, committed, or is responsible for the conduct alleged herein;

    b.  Whether Elanco's conduct constitutes the violations of law alleged herein;

    c.  Whether Elanco acted willfully, recklessly, negligently, or with gross negligence in the violations of laws alleged herein;

    d.  Whether Class Members are entitled to injunctive relief; and

    e.  Whether Class Members are entitled to restitution and damages.

45.     By seeing the name, labeling, display and marketing of the Product, and by purchasing the Product, all Class Members were subject to the same wrongful conduct.

46.     Absent Elanco's material deceptions, misstatements and omissions, Plaintiff  and other Class Members would not have purchased the Product.

47.    Plaintiff's claims are typical of the claims of the Class, respectively, because she purchased  the Product and was injured thereby.

48.    The claims of Plaintiff and other Class Members are based on the same legal theories and arise from the same false, misleading and unlawful conduct.

49.    Plaintiff will fairly and adequately protect the interests of the classes and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the classes.

50.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.

51.    The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.

52.    By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

53.    The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

54.    The prosecution of separate actions by members of the class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE MONTANA CONSUMER PROTECTION ACT

55.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.    Plaintiff brings this claim individually and on behalf of the members of the proposed Montana Class against the Defendant.

57.    The deceptive acts and practices of Defendant in concealing the true nature of the Product, as described in this Complaint, violate the Montana Consumer Protection Act.

58.    Defendant represented that the Products have characteristics, uses, benefits, and qualities that the Products do not in fact have, and Defendant advertised the Products with the intent not to sell them with the advertised qualities. Defendant thus was engaged in unfair and deceptive business practices in violation of Montana's Consumer Protection Act.

59.    As a direct and proximate result of Defendant's conduct, Plaintiff and Montana Subclass Members have suffered injury and economic damages and are entitled to relief under MCA 30-14-133, including fees and treble damages.

### COUNT II
### VIOLATION OF STATE CONSUMER PROTECTION STATUTES

**(ON BEHALF OF THE MULTI-STATE CONSUMER CLASS)**

60.     Plaintiff repeats and realleges each and every allegation above as if set forth herein.

61.     The Consumer Protection Acts of the States in the Multi-State Consumer Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

      a.     Alabama Deceptive Trade Practices Act (ALA. CODE §§ 8-19-1);

      b.     Arizona Consumer Fraud Act (ARIZONA REV. STAT. §§ 44-1521);

      c.     Arkansas Deceptive Trade Practices Act (Ark. Code § 4-88-101);

      d.     Delaware Consumer Fraud Act (DEL. CODE §§ 2513);

      e.     Hawaii Unfair and Deceptive TPA (Hawaii Revised Stat. § 480-1);

      f.     Hawaii Uniform Deceptive TPA (Hawaii Revised Stat. (§ 481A-1);

      g.     Indiana Deceptive Consumer Sales Act (Ind. Code Ann. § 24-5-0.5-0.1);

      h.     Iowa Consumer Fraud Act (Iowa Code § 714.16);

      i.     Louisiana UTPCPL  (La. Rev. Stat. Ann. § 51:1401);

      j.     Michigan Consumer Protection Act (MICH. COMP. LAWS § 445.903);

      k.     New Mexico Unfair Practices Act (N.M. Stat. Ann. § 57 12 1);

      l.     Ohio Consumer Sales Practices Act (OHIO REV. CODE §§ 1345.01);

m.      Oklahoma Consumer Protection Act (Okla. Stat. 15 § 751);

n.      Rhode Island UTP and CPA (R.I. Gen. Laws § 6-13.1-1);

o.      Texas Deceptive Trade Practices Act (TEX. BUS. & COM. CODE §§ 17.41);

p.      West Virginia Con. Credit and Protect. Act (W. Va. Code §§ 46A-6-101).

62.     Defendant intended that Plaintiff and the other members of the Multi-State Consumer Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by its deceptive conduct.

63.     As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff, and other members of Multi-State Consumer Class, have sustained damages in an amount to be proven at trial.

## COUNT III
## UNJUST ENRICHMENT

64.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.     By means of Defendant's wrongful conduct alleged herein, Defendant knowingly sold the Products to Plaintiff and Class Members in a manner that was unfair, unconscionable, and oppressive.

66.     Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and the Class Members. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

67.     As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

68.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

69.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, without justification, from selling the Products to Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under such circumstances making it inequitable to do so constitutes unjust enrichment.

70.     The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class. Defendant should be compelled to return in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by Defendant.

## **RELIEF DEMANDED**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

    a.  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the members of the Classes;

    b.  For an order declaring the Defendant's conduct violates the statutes and laws referenced herein;

c. For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiff and the Classes for all causes of action;

d. For an order requiring Defendant to immediately cease and desist from selling their misbranded Products in violation of law; enjoining Defendant from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

e. For prejudgment and postjudgment interest on all amounts awarded;

f. For an order awarding punitive damages; and

g. For an order awarding attorneys' fees and expenses and costs of suit.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: July 14, 2022

Respectfully submitted,

HEENAN & COOK, PLLC

*/s/ John Heenan*
John Heenan
1631 Zimmerman Trail
Ste 1
Billings, MT 59102
Tel: (406) 839-9091
john@lawmontana.com

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
(*Pro hac vice forthcoming*)
60 Cuttermill Rd
Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com

**THE KEETON FIRM LLC**
Steffan T. Keeton
(*Pro hac vice forthcoming*)
100 S Commons
Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com

*Attorneys for Plaintiff and the Class*